# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50246 | **DATE** | 5/9/2003 |
| **CASE TITLE** | Miller's Blasting Service, Inc., et al. vs. Texas AGA, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

AGA and Zogg's motion for summary judgment; Legion's motion for summary judgment and motion for leave to file counterclaim; plaintiff's motion for summary judgment; and Nobel's motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, Legion's motion for leave to file a counterclaim for reformation is granted; Legion's motion for summary judgment as to Counts IV and V of the Millers' complaint and its counterclaim for reformation is granted; the Millers' motion for summary judgment as to Counts IV and V of their complaint is denied; and AGA and Zogg's motion for summary judgment as to Counts I-III of the Millers' complaint is granted. Nobel's motion for summary judgment as to AGA and Zogg's third-party complaint is now moot. The policy of insurance issued by Legion to Miller's Blasting Service, policy number WC1-0291093, is reformed to reflect a policy period of September 4, 1997 to September 4, 1998. The court further declares Legion has no duty to indemnify or defend the Millers under this same policy with respect to the accident on September 3, 1997 involving Mark Owens. This case is hereby dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 12 2003 | 91 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 5-9-03 | |
| /LC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | SW mailing deputy initials | |

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

Miller's Blasting Service, Inc., et al.  **JUDGMENT IN A CIVIL CASE**

v.  Case Number: 99 C 50246

Texas AGA, Inc., et al.

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Legion's motion for leave to file a counterclaim for reformation is granted; Legion's motion for summary judgment as to Counts IV and V of the Millers' complaint and its counterclaim for reformation is granted; the Millers' motion for summary judgment as to Counts IV and V of their complaint is denied; and AGA and Zogg's motion for summary judgment as to Counts I-III of the Millers' complaint is granted. Nobel's motion for summary judgment as to AGA and Zogg's third-party complaint is now moot. The policy of insurance issued by Legion to Miller's Blasting Service, policy number WC1-0291093, is reformed to reflect a policy period of September 4, 1997 to September 4, 1998. The court further declares Legion has no duty to indemnify or defend the Millers under this same policy with respect to the accident on September 3, 1997 involving Mark Owens. This case is hereby dismissed in its entirety.

All orders in this case are now final and appealable.

Michael W. Dobbins, Clerk of Court

Date: 5/9/2003

Susan M. Wessman, Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

MILLER'S BLASTING SERVICE, INC., )
RONALD D. MILLER, and MILDRED A. )
MILLER, )
 )
    Plaintiffs, )
 )
  v. )
 )
TEXAS AGA, INC., JACK ZOGG, and )
LEGION INSURANCE COMPANY, )
 )
    Defendants. )
                                        No. 99 C 50246

TEXAS AGA, INC., and JACK ZOGG, )
 )
    Third-Party Plaintiffs, )
 )
  v. )
 )
NOBEL INSURANCE COMPANY, NOBEL )
INSURANCE AGENCY, and RENAISSANCE )
U.S. HOLDINGS, INC., )
 )
    Third-Party Defendants )

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Plaintiffs, Miller's Blasting Service, Inc. ("MBS"), Ronald D. Miller, and Mildred A. Miller (collectively referred to as the "Millers"), have filed a five-count second-amended complaint against defendants, Texas AGA, Inc. ("AGA"), Jack Zogg, and Legion Insurance Company ("Legion"). The Millers have sued AGA and Zogg together for negligence (Count I) and "insurance placement liability" under 735 ILL. COMP. STAT. 5/2-2201 (Count

II); AGA by itself for breach of contract (Count III); and Legion for declaratory judgment (Count IV) and breach of contract (Count V). AGA and Zogg, in turn, have filed a single-count amended third-party complaint against third-party defendants, Nobel Insurance Company, Nobel Insurance Agency, and Renaissance U.S. Holdings, Inc. (collectively referred to as "Nobel"), for a right of contribution should AGA and Zogg be found liable on the Millers' complaint. As MBS is incorporated with its principal place of business in Illinois, Ronald and Mildred Miller are both Illinois citizens, AGA is incorporated with its principal place of business in Texas, Zogg is a Texas citizen, Legion is incorporated with its principal place of business in Pennsylvania, and the amount in controversy exceeds $75,000, diversity jurisdiction is proper based on 28 U.S.C. § 1332. Supplemental jurisdiction is proper over the third-party complaint under 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(a). Before the court are the following motions: AGA and Zogg's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56, as to Counts I-III of the Millers' complaint; the Millers' and Legion's cross-motions for summary judgment as to Counts IV and V of the Millers' complaint; Nobel's motion for summary judgment as to AGA and Zogg's third-party complaint; and Legion's motion to file a counterclaim against the Millers under Rule 15.

## II. BACKGROUND

Although Mildred and her husband, Ronald, are co-owners of MBS, Mildred has always handled all of the company's insurance matters by herself. (AGA & Zogg LR 56.1(a) ¶ 8; Legion LR 56.1(a) ¶ 11(1)[1]) So when Nobel, the Millers' prior insurance agency, decided to get out of the agency side of the insurance business, Mildred met with Zogg and Earl Taylor on July 8, 1997, to discuss MBS' overall insurance needs, as well as potential savings on worker's compensation insurance. (Legion LR 56.1(a) ¶¶ 10(2), 11(2)) Zogg, who initiated the contact with Mildred, attended the meeting as an insurance producer for AGA, a Texas-based insurance agency. (AGA & Zogg LR 56.1(a) ¶ 9; Legion LR 56.1(a) ¶ 10(1))

During this meeting, Mildred told Zogg that MBS' current worker's compensation policy in Illinois expired the following month, on August 6, 1997.[2] (Legion LR 56.1(a) ¶ 11(2)) At the same time, Zogg told Mildred that he would need certain information and documents to get her a worker's comp. policy,

---

[1] Contrary to Local Rule 56.1 ("LR 56.1"), Legion's statement of facts is broken down by unnumbered bullet points, rather than numbered paragraphs. For that reason, the court has followed the Millers' lead by referring to the bullet points as if they had been numbered. In the future, Legion's counsel should separately number each paragraph in the LR 56.1(a) statement of facts.

[2] In fact, MBS' old worker's comp. policy had expired, unbeknownst to Mildred at the time, roughly two full years before, on August 2, 1995. (Id. ¶ 11(6)) Mildred apparently did not realize this until much later, after all of the events recited in this opinion occurred.

including MBS' "loss runs," or worker's compensation claims history. (Id. ¶¶ 10(2), 11(2); AGA & Zogg LR 56.1(a) ¶ 21) Mildred said she would try to get the information. (Legion LR 56.1(a) ¶ 11(2))

A few weeks later, on July 21, Mildred informed Ruth Bangs, an account executive at AGA, that she had not yet been able to obtain the requested loss runs. Bangs herself then ordered them from Nobel. (Legion LR 56.1(a) ¶ 13(2) & Pl. Resp. ¶¶ 11(2), 13(2)) She received them on August 12, 1997, six days after MBS' old worker's comp. policy supposedly had expired, and then forwarded them on to InsurAmeriCorp, a company that functioned as a sort of middleman between insurance agencies and Legion. (Legion LR 56.1(a) ¶¶ 13(3), 14(2)) After some more paper shuffling over the next few weeks, Legion authorized InsurAmeriCorp, on September 3, 1997, to release Legion's quote for a worker's compensation policy on MBS. (Id. ¶ 14(5))

Coincidentally, and rather tragically, on that same day one of the Millers' employees, a man by the name of Mark Owens, died in a work-related accident. (Id. ¶ 11(8)) The next day, September 4, 1997, Mildred called up Zogg to tell him about the accident and inquire whether he had obtained MBS' worker's comp. insurance yet. (Id. ¶ 11(9)) Zogg said he had not but that he had just received a quote from Legion the day before. Mildred asked if the policy could be backdated to cover the September 3 accident; Zogg said it could not. (Id. ¶¶ 10(4), 11(10))

Nevertheless, Mildred agreed to accept Legion's worker's comp. policy with a September 4 effective date. (Id. ¶¶ 11(10)-(12))

Per that conversation, the staff in charge of actually issuing the worker's comp. policy at Legion had been instructed from Legion's underwriting department to issue the MBS policy with coverage dates from September 4, 1997 to September 4, 1998. Due to a scrivener's error on the clerical staff's part, however, the effective date became September 1 – two days before Owens' accident. (Id. ¶¶ 15(4)-(5)) A few months later, in December 1997, after an internal audit discovered the error, Legion reissued the policy with the same policy number, merely changing "September 1" to "September 4" in the policy period. (Id. ¶¶ 15(6)-(7), 16(4))

Now that the Millers have incurred various costs and expenses arising from Owens' accident, such as medical expenses, funeral and burial expenses, and weekly death benefits, as well as legal costs and fees in defending themselves in two law suits that have been filed in state court, they seek to hold AGA, Zogg, and Legion liable for some or all of these damages.

### III. **ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986); Remer v. Burlington Area Sch. Dist., 286 F.3d 1007, 1010 (7th Cir. 2002). With cross-motions for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in favor of the party against whom the motion under consideration is made. See O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001). The court's function is not to weigh the evidence but merely to determine if there is a genuine factual issue for trial - one that can properly be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. See Hilt-Dyson v. City of Chicago, 282 F.3d 456, 462 (7th Cir.) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)), cert. denied 123 S. Ct. 97 (2002). Because the parties assume without discussion Illinois law controls this diversity action, the court will do the same. See Checkers Eight Ltd. P'ship v. Hawkins, 241 F.3d 558, 561 (7th Cir. 2001).

**A.  Legion**

The Millers' theory for holding Legion liable is straightforward and based on the following premises: Mildred originally asked if the worker's compensation policy Legion had approved could be backdated to sometime before September 4, 1997; Legion issued the policy with an effective date of September 1, 1997; and Owens' accident occurred on September 3, 1997. Therefore, the Millers conclude, the policy provides coverage for the accident. Legion naturally disputes this and asks the court

to reform the policy based on mutual mistake to reflect what it says was the parties' true intent - an effective date of September 4, 1997.

Under Illinois law, a mutual mistake occurs when "the parties are in actual agreement but the agreement in its written form does not express the parties' real intent." In re Marriage of Johnson, 604 N.E.2d 378, 386 (Ill. App. Ct. 1992). When a mutual mistake is alleged, parol evidence is admissible to show the true intent and understanding of the parties, even if the written instrument is clear and unambiguous on its face. See id. at 385-86; see also Schaffner v. 514 W. Grant Place Condo. Ass'n, Inc., 756 N.E.2d 854, 865 (Ill. App. Ct. 2001). The proof necessary to establish a mutual mistake so as to justify reformation must be clear and convincing. See Schaffner, 756 N.E.2d at 865; Elson v. State Farm Fire & Cas. Co., 691 N.E.2d 807, 817 (Ill. App. Ct. 1998).

In this case, the court finds Legion's evidence of a mutual mistake is not just clear and convincing, but overwhelming. On Legion's side, every single person in the chain, from Zogg himself to Ruth and Alfred Bangs at AGA (the latter is AGA's president) to Sean Ryan at InsurAmeriCorp to, of course, the various employees at Legion who had anything to do with the MBS policy, including the individual who took the quote request from InsurAmeriCorp, the underwriting staff, and the staff responsible for issuing the policy - all of them understood the policy was to

have an effective date of September 4, 1997. Indeed, Zogg, Ruth and Alfred Bangs, Sean Ryan, and Julie Miller and Kim Becker of Legion consistently testified in their respective depositions they believed September 4, not September 1, was the effective date of the MBS policy. (Legion LR 56.1(a) ¶¶ 10(4)-(6), 12(6)-(9), 13(9)-(11), 14(7)-(8), 15(4)-(5), 16(3)) But the real clincher is that Mildred herself testified that, after Zogg told her he could not backdate the policy, she understood the policy would have a September 4 effective date. (Id. ¶ 11(10)) Mildred also admitted in her deposition she received and personally reviewed various fax confirmations, copies of certificates of insurance, letters, and finance agreements, all of which indicated the policy had been bound for coverage between September 4, 1997 and September 4, 1998. (Id. ¶¶ 11(12)-(14)) These were all consistent with her understanding that the policy would have a September 4 effective date. (Id. ¶¶ 11(15)-(16))

In light of this undisputed evidence, it is undeniable the true intent of the parties – both the Millers and Legion – was to issue a worker's compensation policy with a policy period of September 4, 1997 to September 4, 1998. It is likewise clear that, due to a scrivener's error, the actual policy Legion issued did not express the parties' real intent. Based on this mutual mistake, the court denies the Millers' motion for summary judgment as to Counts IV and V of their complaint and grants Legion's motion for summary judgment on those same counts.

-8-

With that, but before the court can actually reform the policy, one procedural matter must be addressed. As the Millers have pointed out, the first time Legion ever mentioned reformation or its mutual mistake defense was in its motion for summary judgment. In response, Legion has filed a motion for leave to file a counterclaim for reformation under Rule 15. The Millers oppose this motion by claiming it is too late to file a counterclaim and they would be prejudiced if the motion were granted.

On the one hand, the Millers are quite right that Legion should have filed its counterclaim much sooner. Waiting until after cross-motions for summary judgment have been filed to raise the reformation claim for the first time is simply inexcusable, especially when Legion obviously knew what the evidence was before those motions were filed and certainly must have known reformation would be the centerpiece of its argument on summary judgment. On the other hand, leave to amend a party's pleadings should be given freely "when justice so requires," Fed. R. Civ. P. 15(a), and the court does not see how the Millers would be prejudiced by allowing Legion to file its counterclaim now. To begin with, all of the evidence recited above that was used to decide whether summary judgment should be granted or denied as to Counts IV and V of the Millers' complaint is the exact same evidence Legion relies on to support its reformation claim. For this same reason the Millers' other argument - that they would be

unduly prejudiced because they somehow would have approached discovery in this case differently if reformation were at issue - rings hollow. The fact of the matter is that the parties have deposed many of the witnesses with any knowledge of the circumstances surrounding the issuance of the policy, a number of whom they deposed not once but twice. Even more specifically, counsel for both Legion and the Millers extensively questioned these witnesses about their understanding of the effective date. The court simply does not see what more could be gained on this point by reopening discovery or how the Millers would be prejudiced. Legion's motion for leave to file its counterclaim for reformation is therefore granted.

With the reformation claim now properly before it, the court hereby grants summary judgment in favor of Legion on its counterclaim and reforms the policy of insurance issued by Legion to MBS, policy number WC1-0291093, to reflect a policy period of September 4, 1997 to September 4, 1998. It further finds Legion has no duty to indemnify or defend the Millers under this same policy with respect to Owens' accident on September 3, 1997.

### B.  AGA and Zogg

#### 1.  Breach of contract (Count III)

In Count III of their complaint, the Millers allege AGA breached a contract it had with them to "procure, bind and place" a worker's compensation insurance policy. To establish a contract to procure insurance in Illinois, the Millers must show

they proposed to be insured, AGA agreed to insure them, the subject, period, amount, and rate of the insurance were ascertained or understood, and the premium was paid when demanded. See Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc., 589 N.E.2d 1128, 1130 (Ill. App. Ct. 1992); Scarsdale Villas Assocs., Ltd. v. Korman Assocs. Ins. Agency, Inc., 533 N.E.2d 81, 83 (Ill. App. Ct. 1988).

Presumably, although they do not make it clear, what the Millers mean in Count III is that AGA breached a contract to procure worker's compensation insurance for them *sometime before September 4, 1997.* Obviously, AGA *did* procure worker's comp. insurance for them as of that date, so the Millers cannot claim AGA failed to procure insurance for them altogether. Given the evidence that Mildred told Zogg at their July 8 meeting that MBS' current Illinois worker's comp. policy expired on August 6, 1997, it seems what the Millers have in mind is that AGA breached a contract to procure worker's compensation insurance for them before August 6, 1997.

But even this more limited claim is dead in the water. First, the Millers have not pointed out anything AGA or Zogg said or did that could reasonably be interpreted as an agreement to procure insurance. The best they can come up with is that, according to Mildred, Zogg told her during the July 8 meeting he would be able to get her a better rate on worker's compensation insurance than what she was currently paying, he would "take care

-11-

of her," and he would "get her insurance." Read in context, however, these comments represent, at best, a promise to obtain insurance *quotes*, not the insurance itself. In short, the court finds no reasonable jury could construe anything Zogg said during the July 8 meeting as a promise that he or AGA would, in fact, obtain a worker's compensation insurance policy for the Millers, let alone that he or AGA would do so before August 6.

Nevertheless, even assuming Zogg did make such a promise, the real problem with the Miller's breach of contract claim is that at least one of the essential terms of the supposed agreement to procure insurance was never ascertained. Specifically, although the subject of the agreement (worker's compensation insurance) was clear enough, the period (August 6, 1997 to August 6, 1998) could probably be implied from the circumstances, and the amount of insurance was really not an issue (e.g., enough to satisfy Illinois law), there was never any agreement as to the rate or premiums the Millers were willing to pay. On this point, the Millers rather incredibly seem to claim they would have taken whatever coverage AGA procured, no matter the rate, because they "did not want a quote," they "wanted the insurance." This is absurd. To begin with, there is absolutely no evidence Mildred ever told Zogg or AGA they would be willing to take whatever insurance they could get, regardless of price. And it would be totally unrealistic for Zogg or AGA to have assumed such a thing. Suppose AGA came back with a quote that

was fifty times more than what the Millers were currently paying. The Millers obviously would not have been obligated to accept it. Moreover, the Millers never paid a single premium for their worker's compensation insurance, and AGA did not issue a binder for such insurance, until *after* Mildred agreed to accept Legion's quote on September 4, 1997. Cf. Lake County Grading, 589 N.E.2d at 1131 (proposed insured's payment of the initial premium and broker's issuance of binders provided circumstantial evidence that the subject, period, and rate of a contract to procure insurance were ascertained).

For all of these reasons, the court finds there was no enforceable contract to procure worker's compensation insurance. Count III is therefore dismissed.

### 2. Negligence (Count I)

Although based in tort rather than contract, Count I of the Millers' complaint is largely the same as Count III: AGA and Zogg negligently failed to timely procure a worker's compensation policy for MBS. In Illinois, an insurance broker owes a fiduciary duty to "faithfully negotiate and procure a policy according to his client's wishes and requirements." Kanter v. Deitelbaum, 648 N.E.2d 1137, 1139 (Ill. App. Ct. 1995); see also Shults v. Griffin-Rahn Ins. Agency, Inc., 550 N.E.2d 232, 234 (Ill. App. Ct. 1990). Illinois law places a "particular burden" on an insurance broker to exercise competence and skill when procuring insurance. Schults, 550 N.E.2d at 234. As for acting

in a timely manner, a broker who takes an application may be liable for misfeasance if he causes an unreasonable delay or fails to act "with diligence to place the insurance in compliance with the principal's instructions." Lake County Grading, 589 N.E.2d at 1132. A broker thus owes a duty to "procure insurance before the expiration of the proposed insured's former policies or to advise the proposed insured that such coverage was not available within sufficient time to allow the proposed insured to obtain other coverage." Id.

Although AGA and Zogg did not procure a worker's compensation policy for the Millers before August 6, the Millers' negligence claim still must fail because it is undisputed AGA and Zogg repeatedly notified the Millers of the inability to obtain a policy before that date. Beginning with the July 8 meeting, Zogg told Mildred he would need, among other things, MBS' loss runs to obtain a quote on a worker's compensation policy. (AGA & Zogg LR 56.1(a) ¶ 22) A few weeks later, on July 21, either Zogg or someone from AGA called up Mildred and again asked for the loss runs so a quote could be obtained. (Id. ¶ 24) Then on July 24, AGA or Zogg again requested the loss runs from Mildred, who said she would "keep on it." (Id. ¶ 25) It was apparently at this point that Ruth Bangs decided she would try to order the loss runs from Nobel. (Legion LR 56.1(a) ¶ 13(2)) Finally, on August 4, 1997 - two days before MBS' current worker's comp. policy was supposedly set to expire - AGA faxed a letter to the Millers,

attached to which were proposals for some of their other insurance policies. As to the worker's comp., however, the letter stated: "Also, we have not received the workers compensation loss runs. If we can be of any assistance here please let us know as we will pursue this as soon as they are received." (AGA & Zogg LR 56.1(a) ¶¶ 27-30) Mildred testified in her deposition she understood this letter to mean that AGA had been unable to obtain a quote, let alone a policy, for worker's compensation insurance as of August 4. (Id. ¶ 32) And all the while, with August 6, 1997 - what Mildred believes was the expiration date for MBS' current worker's comp. policy - fast approaching, Mildred never bothered to try renewing that policy but simply let it lapse. (As mentioned above, the old policy actually had lapsed some two years before, but Mildred thought it was still in effect.) Indeed, Mildred admitted in her deposition that she knew MBS no longer had any worker's compensation coverage as of August 6, 1997. (Id. ¶¶ 33, 35)

This undisputed evidence leaves no doubt that AGA and Zogg made the Millers well aware they could not procure a worker's compensation policy until they had the loss runs and, further, told the Millers in writing on August 4 they still had not received the loss runs. In the face of these clear warnings, the Millers just let their old policy expire. While that was their choice, they cannot now blame AGA or Zogg for their lack of insurance. Rather, AGA and Zogg did exactly what they were

supposed to do. By advising the Millers they did not have the
loss runs needed to procure a worker's compensation policy and
leaving the Millers with sufficient time to renew their old
policy, AGA and Zogg discharged any duty they owed the Millers.
The court therefore grants summary judgment in favor of AGA and
Zogg on Count I.

### 3. Insurance placement liability (Count II)

Because the Millers' claim for "insurance placement
liability" under 735 ILL. COMP. STAT. 5/2-2201 is wholly
duplicative of their negligence claim in Count I, the court
grants summary judgment as to Count II for the same reasons
discussed above in subsection III-B-2.

### C. Nobel

AGA and Zogg's third-party complaint against Nobel for
contribution depends entirely on AGA and Zogg being found liable
to the Millers. Because the court has granted summary judgment
in favor of AGA and Zogg on Counts I-III of the Millers'
complaint, AGA and Zogg's third-party complaint against Nobel and
Nobel's motion for summary judgment on that third-party complaint
are moot.

## IV. CONCLUSION

For the reasons stated above, Legion's motion for leave to
file a counterclaim for reformation is granted; Legion's motion
for summary judgment as to Counts IV and V of the Millers'

complaint and its counterclaim for reformation is granted; the Millers' motion for summary judgment as to Counts IV and V of their complaint is denied; and AGA and Zogg's motion for summary judgment as to Counts I-III of the Millers' complaint is granted. Nobel's motion for summary judgment as to AGA and Zogg's third-party complaint is now moot. The policy of insurance issued by Legion to Miller's Blasting Service, policy number WC1-0291093, is reformed to reflect a policy period of September 4, 1997 to September 4, 1998. The court further declares Legion has no duty to indemnify or defend the Millers under this same policy with respect to the accident on September 3, 1997 involving Mark Owens.

E N T E R:

_____
**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: *May 9, 2003*